T.C. Memo. 1997-63


UNITED STATES TAX COURT


CRAIG V. ADAMS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10587-95.                    Filed February 4, 1997.


<u>Clinton A. Jackson</u>, for petitioner.

<u>Charles M. Ruchelman</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Chief Judge</u>:  Respondent determined a deficiency of $30,394 in petitioner's Federal income tax for 1991 and an accuracy-related penalty of $6,078 pursuant to section 6662(a). Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all

Rule references are to the Tax Court Rules of Practice and Procedure.

After a concession by petitioner, the issues remaining for decision are: (1) Whether petitioner failed to report income; (2) whether petitioner is entitled to depreciation deductions; (3) whether petitioner is entitled to rental expense deductions; (4) whether petitioner is entitled to claim his mother and his father as his dependents; (5) whether petitioner is entitled to head of household filing status; and (6) whether petitioner is liable for the accuracy-related penalty under section 6662.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petition was filed, petitioner resided in Washington, D.C. During the first 6 months of 1991, petitioner was chief resident at Washington Hospital Center. For the last 6 months of 1991, petitioner was in a private medical practice.

## World Medical/Dental--Equipment Leasing and Depreciation

Petitioner purchased various medical and dental equipment, office furniture, and a used neon sign during 1987, 1988, and 1989. During 1989, 1990, and at least a portion of 1991, petitioner's mother operated World Medical/Dental, a walk-in dental clinic on 16th Street, N.W., in Washington, D.C. Pursuant to a lease agreement dated July 1, 1987, petitioner's mother was to pay $2,500 per month for the use of the medical and dental

equipment and the office furniture in the World Medical/Dental business.  On December 6, 1988, petitioner and his mother entered into an agreement whereby petitioner's mother would pay petitioner $500 per month for the use of a used neon sign that read "World Med/Dent".

On his 1989 and 1990 Schedules C, petitioner reported that his principal business was a medical/dental office known as "World Med/Dent" located on 16th Street, N.W., in Washington, D.C.  Petitioner reported income of only $10,000 and $12,500 on his Schedules C for 1989 and 1990, respectively.  In addition to depreciation on the leased items, petitioner claimed advertising, postage, laundry, travel, and supplies as Schedule C expenses in 1989 and 1990.

On his 1991 Schedule C, petitioner reported that his principal business was a "Medical Office/Physician" located on Irving Street, N.W., Washington, D.C.  Petitioner received no lease payments from his mother during 1991, and he retrieved his equipment from his mother during April 1991.

During 1991, petitioner did not use the neon sign or any of the dental equipment in his private medical practice.

Unreported Income

Dr. Marie Kay (Dr. Kay) was employed by World Medical/Dental beginning in January 1988.  According to Dr. Kay's employment agreement, all equipment, furniture, and supplies of World Medical/Dental were and were to remain the property of

petitioner.  Dr. Kay was initially to be paid a certain amount per working day and then, after 270 days, Dr. Kay's pay was to be a 20-percent share of the net profits.  On or about February 1, 1991, Dr. Kay presented a cashier's check in the amount of $23,000 to petitioner's mother.  On February 8, 1991, Dr. Kay presented a check in the amount of $15,000 to petitioner's mother.  The February 8, 1991, check bore the notation "Deposit for purchase of practice World Dental".  On or about February 22, 1991, Dr. Kay presented a cashier's check in the amount of $25,000 to petitioner's mother.

In late February 1991, petitioner received a check in the amount of $33,000 from the account of World Medical/Dental.  On March 6, 1991, petitioner received an additional $25,000 from his parents.  These amounts were in addition to gifts that petitioner received from his parents during 1991.

Pennsylvania Property

In February 1990, petitioner inherited property in Pittsburgh, Pennsylvania (the Pennsylvania property).  During 1990 and 1991, petitioner received no rental income from the property.  On his 1991 Schedule E, petitioner claimed rental expenses totaling $3,955.42 relating to the Pennsylvania property.

Dependency and Head of Household Status

Petitioner's mother and father did not file 1991 Federal income tax returns.  During 1991, petitioner's parents resided,

at least for some period of time, in a Washington, D.C., home that was owned by petitioner and at least one of his brothers. Petitioner's parents were in Florida on numerous occasions during 1991 and made several trips to other locations during the year. In 1991, petitioner's father received all of his Social Security checks at a Florida address where petitioner's grandmother resided. During 1991, petitioner received gifts from his parents totaling at least $20,000. Petitioner deposited into his personal bank account checks made payable to his father totaling $10,240.42. Petitioner's mother received an undetermined amount of interest payments from investments during 1991.

## OPINION

### Unreported Income

Respondent determined that petitioner failed to report $63,000 that was received from the sale of his medical/dental equipment. This amount corresponds to the amounts received by petitioner's mother from Dr. Kay. During 1991, petitioner received payments of $33,000 and $25,000 and deposited into his personal account checks payable to his father totaling $10,240.72, in addition to his receipt of over $20,000 in gifts from his parents.

Petitioner argues that the money that was received from World Medical/Dental and from petitioner's father was in repayment of loans.

Neither petitioner nor his parents could provide any specifics about the claimed loans. No documentation or other objective indicia of a bona fide debt were introduced. On the minimal evidence presented, and in view of the family relationship, we cannot conclude that there was any bona fide obligation between petitioner's parents and petitioner. See Perry v. Commissioner, 92 T.C. 470, 481 (1989), affd. without published opinion 912 F.2d 1466 (5th Cir. 1990).

Petitioner also argues that no sale of the World Medical/Dental practice to Dr. Kay was ever consummated. Petitioner does not deny, however, that he was the owner of the equipment, furniture, and supplies of World Medical/Dental at the time the alleged sale occurred. That the sale to Dr. Kay was not completed does not exclude from gross income any money received by petitioner in contemplation of the sale of his equipment that was part of World Medical/Dental.

Dr. Kay testified that the money that she paid to petitioner's mother was a downpayment on the purchase of World Medical/Dental. Dr. Kay also testified that she never received any of the assets of World Medical/Dental and that she was never refunded any portion of her downpayment. According to Dr. Kay's testimony, World Medical/Dental was suddenly closed in April 1991 without any explanation.

Petitioner's only explanation at trial for Dr. Kay's payments is that the $63,000 received by World Medical/Dental

from Dr. Kay was for expenses due under a term of Dr. Kay's employment contract. On brief, petitioner did not make this argument and apparently abandoned this position. Even if this position were not abandoned, petitioner has not produced any reliable evidence in support of his claim. Furthermore, Dr. Kay testified credibly that she never shared in the net profits and that her salary remained at a certain dollar amount per day.

Petitioner has not offered any credible evidence to disprove respondent's determination that he received income from funds paid by Dr. Kay. Petitioner's changing factual contentions suggest that he has little regard for the truth. Thus, respondent's determination will be sustained.

Equipment Depreciation

Respondent determined that petitioner is not entitled to depreciation deductions claimed on medical/dental equipment and a used neon sign. Petitioner bears the burden of establishing that he is entitled to the claimed deductions. Rule 142(a); INDOPCO v. Commissioner, 503 U.S. 79, 84 (1992); Rockwell v. Commissioner, 512 F.2d 882, 886 (9th Cir. 1975), affg. T.C. Memo. 1972-133. This includes substantiating the amount of the item claimed. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

"Section 167(a) provides that a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in the trade or business or of property held by the taxpayer for the

production of income shall be allowed as a depreciation deduction." Sec. 1.167(a)-1(a), Income Tax Regs. The allowance is "that amount which should be set aside for the taxable year * * * so that the aggregate of the amounts set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property". Sec. 1.167(a)-1(a), Income Tax Regs. The basis to be used is "the adjusted basis provided in section 1011 for the purpose of determining the gain on the sale or other disposition of such property." Sec. 167(g).[1] In the instant case, petitioner's basis is the cost of the medical/dental equipment and the used neon sign.

As evidence of the cost of the items, petitioner introduced handwritten documents to show various alleged sales of equipment from petitioner's father to petitioner. At trial, petitioner testified that petitioner's father used petitioner's money to purchase the equipment and that the documents were executed to memorialize the transaction. Petitioner's father's testimony indicated that the documents, although dated in 1987, 1988, and 1989, were not necessarily prepared contemporaneously with the purchase of the equipment. No receipts or other independent

---

[1]This is the section in effect for property placed into service during 1987, 1988, and 1989. The section was later renumbered sec. 167(c) by sec. 11812(a)(1) and (2) of the Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, 104 Stat. 1388, 1388-534, for property placed into service after November 5, 1990.

evidence of the purchase or of the cost of these items was received into evidence from which we can estimate an allowable deduction, cf. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); we must have some basis on which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Respondent's determination that petitioner is not entitled to depreciation deductions for medical/dental equipment and a used neon sign will be sustained.

Pennsylvania Property

Respondent determined that petitioner is not entitled to deduct any claimed expenses associated with the Pennsylvania property other than $732 in real estate taxes paid by petitioner. The parties stipulated that certain amounts claimed as supplies and advertising expense were paid, but respondent does not agree that the amounts spent related to rental of the Pennsylvania property. Respondent contends that the advertisement and the supplies, along with the claimed repairs and depreciation expenses, are not deductible because petitioner did not hold the property in the course of a trade or business or for the production or collection of income during 1991.

The record is totally lacking in credible evidence of petitioner's attempting to rent the Pennsylvania property. At trial, petitioner admitted that, at some point during "the spring" of 1991, he decided to "unload" the property. Photographs that were admitted as evidence of the repairs that

petitioner made to the property show a "For Sale" sign in the window of the property. A classified advertisement that was introduced at trial likewise indicates that the property was for sale, not for rent.

Petitioner also introduced numerous receipts in an attempt to substantiate purchases of items for supplies and repairs. The majority of these receipts show purchases in the Washington, D.C., area, not in the Pittsburgh area. That petitioner would purchase all of these items in the Washington, D.C., area and transport them to Pittsburgh to make the repairs is not credible, especially in light of petitioner's testimony that a family friend in Pittsburgh made most of the repairs.

On the record before us, we cannot conclude that petitioner attempted to rent the Pennsylvania property. We conclude that petitioner did not hold out the Pennsylvania property in the course of a trade or business or for the production of income during 1991. Thus, respondent's determination that petitioner is not entitled to deductions relating to the property, in excess of the real property taxes allowed, will be sustained.

Personal Exemptions for Petitioner's Parents and
Head of Household Filing Status

Respondent determined that petitioner is not entitled to personal exemptions for petitioner's mother, father, and brother for 1991. At trial, petitioner conceded that he was not entitled to a personal exemption for his brother.

Section 151 provides for deductions for personal exemptions. In this case, petitioner would be entitled to exemptions for his mother and father if his mother and father were dependents under section 152 and if his mother's and father's gross income were less than the exemption amount ($2,150 for 1991). Secs. 151(c), 152; Rev. Proc. 90-64, 1990-2 C.B. 674, 675.

Petitioner's mother and father would be "dependents" if "over half of * * * [their] support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer". Sec. 152(a). Petitioner has not proven that he provided over one-half of his parents' support during 1991. Petitioner's parents lived in a home that was owned by petitioner and at least one of his brothers. Petitioner introduced numerous receipts in an attempt to substantiate his payment of expenses for his parents. From the record in this case, we cannot be certain that these expenditures were made for petitioner, his parents, or otherwise. We are not persuaded by petitioner's or his parents' conclusory assertions in the absence of any corroboration.

Petitioner received at least $20,000 in gifts from his parents during 1991. The source of these funds was not explained at trial. Also, petitioner's mother testified that she received an undetermined amount of interest income during 1991. During 1991, petitioner's mother also operated World Medical/Dental. No evidence was provided as to whether or not petitioner's mother

received any income from World Medical/Dental during 1991.
Petitioner allegedly purchased various items of equipment from
his father.

Petitioner has failed to prove that he provided in excess of
one-half of the support of his parents during 1991 or that his
parents' income was less than the exemption amount, and, thus,
petitioner cannot claim his parents as dependents.

Respondent determined that petitioner is not entitled to
claim head of household status for the year in issue. Section
2(b) provides:

> (1) In general.--For purposes of this subtitle, an
> individual shall be considered a head of a household
> if, and only if, such individual is not married at the
> close of his taxable year, is not a surviving spouse
> (as defined in subsection (a)), and either--
>
> (A) * * *
>
> * * * * * * *
>
> (B) maintains a household which constitutes
> for such taxable year the principal place of abode
> of the father or mother of the taxpayer, <u>if the
> taxpayer is entitled to a deduction for the
> taxable year for such father or mother under
> section 151</u>. [Emphasis added.]

Because petitioner is not entitled to personal exemptions for his
parents under section 151, respondent's determination that
petitioner is not entitled to head of household status will be
sustained.

## Accuracy-Related Penalty

Section 6662(a) imposes a penalty in an amount equal to
20 percent of the underpayment of tax attributable to one or more

of the items set forth in section 6662(b).  Respondent asserts that the entire underpayment of petitioner's tax was due to negligence or intentional disregard of rules or regulations. Petitioner bears the burden of proving that respondent's determinations are erroneous.  Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

"Negligence" includes a failure to make a reasonable attempt to comply with the provisions of the internal revenue laws.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  "Disregard" includes any careless, reckless, or intentional disregard of rules or regulations.  Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.  Large understatements of income have been held to be indicative of negligence or intentional disregard of the rules or regulations.  See Anders v. Commissioner, 68 T.C. 474, 493 (1977).

The section 6662 accuracy-related penalty does not apply with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that petitioner acted in good faith with respect to such portion. Sec. 6664(c)(1).  The determination of whether petitioner acted with reasonable cause and in good faith depends upon the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner claims that he relied on the Internal Revenue Service (IRS) information hotline and the Form 1040 instructions

in preparing his 1991 return.  Such reliance, petitioner claims, is evidence that he acted with reasonable cause and in good faith.

Reliance on "professional" advice will constitute reasonable cause only if the taxpayer acted in good faith and made full disclosure of all relevant facts to the adviser.  See Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1061 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973). Petitioner admitted at trial that, when he called the hotline, he did not explain that the equipment was being leased or that no income was being reported from the activity in 1991.  Petitioner did not make full disclosure so that his alleged reliance on the hotline is reasonable cause.  Petitioner failed to keep adequate records to substantiate his entitlement to deductions that he claimed.  Sec. 6001; Crocker v. Commissioner, 92 T.C. 899, 912 (1989); sec. 1.6001-1, Income Tax Regs.

Petitioner's whole case is based on inconsistencies and improbabilities and lacks credibility.  Petitioner has not established reasonable cause or good faith reliance to excuse him from the penalty for negligence or intentional disregard of rules or regulations.

To reflect the foregoing and a concession of petitioner,

Decision will be entered

for respondent.